IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEBRA A. AND GERALD J. BUDNER, | § | |
| ET AL., | § | |
| | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:06-CV-0329-K |
| | § | |
| WELLNESS INTERNATIONAL | § | |
| NETWORK, LTD., A/K/A WIN, ET AL., | § | |
| | § | |
|     Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 9(b), 12(b)(1) and 12(b)(6), and Defendants' Motion to Compel Arbitration and to Stay and Abate Litigation, both filed May 4, 2006. Because Plaintiffs' claims are barred by limitations, Defendants' Motion to Dismiss is **granted,** and Defendants' Motion to Compel Arbitration and to Stay and Abate Litigation is **denied as moot.**

### I.    **Factual and Procedural Background**

According to Plaintiffs' First Amended Class Action Complaint ("Complaint"), Defendants operate a business known as Wellness International Network, Ltd. ("WIN"), a multi-level marketing network for nutritional products. In their pleadings, Plaintiffs contend that WIN is actually an illegal pyramid scheme. The Complaint states that in exchange for monetary payments, new recruits into the WIN network were given the

opportunity to earn profits primarily based upon the recruitment of additional persons to participate and become "distributors" of WIN products, rather than the quantity of those products actually sold or distributed.

Plaintiffs allege that the majority of WIN products sold are actually purchased by new recruits joining the WIN structure or by persons already in the WIN network, not retail consumers in the general public. According to Plaintiffs, WIN members are required to "qualify" the distributorships in their downline networks in order to collect residual income. This means that each distributor must purchase from Defendants $3,000-5,000 worth of WIN products each month before they will be paid for the efforts of any distributors in their downline. Additionally, Plaintiffs allege that WIN distributors were required to "pay to play," by making significant ongoing purchases in WIN product inventory, in order to "buy into a high rank" and maximize their potential to earn money. Plaintiffs assert that these large inventories purchased by distributors went unsold, because the real objective of the WIN business is expansion of the allegedly illegal pyramid. As a result, Plaintiffs state that the vast majority of WIN distributors lose some or all of the money they have invested in the WIN system.

In their Complaint, Plaintiffs assert that these facts are concealed from prospective WIN members, who are told that WIN is a legal multi-level marketing operation. According to the Complaint, WIN conceals many material facts from prospective members. Those material facts allegedly concealed include that many WIN distributors have lost money on their investment in WIN, that in order to earn the

2

touted commissions and bonuses, distributors had to "qualify" each month by buying $3,000-$5,000 in WIN product inventory, and that the WIN system is structured so that a few people at the top earn money at the expense of the many at the bottom. Plaintiff Marie Ackerman ("Ackerman") signed a distributor contract with WIN on or about December 28, 2000, and Plaintiffs Debra and Gerald Budner (the "Budners") signed a distributor contract with WIN on or about May 11, 2002.

Plaintiffs initially filed suit against WIN in March 2003, in the United States District Court for the Northern District of Illinois.  In July 2003, that court granted Defendants' motion to compel arbitration, upholding the forum selection clause contained in the WIN Agreement, which provides that arbitrable claims (those for less than $100,000) shall be resolved in arbitration, and that non-arbitrable claims must be brought in a state or federal court in Dallas County, Texas.  Plaintiffs then filed a class-wide arbitration claim with the American Arbitration Association, and in December 2004 the arbitrator issued his Partial Final Clause Construction Award.  That award resolved the issues of whether class-wide claims were permitted under the WIN Distributor Agreement and the WIN Rules and Regulations (the "WIN Agreement"), and whether the amount in controversy required that Plaintiffs' claims proceed in court rather than an arbitral forum.

The arbitrator held that under the WIN Agreement, any disputes between the parties must be submitted to arbitration, unless the monetary damages exceed $100,000. Further, the arbitrator determined that nothing in the WIN Agreement barred the

3

prosecution of class-wide claims either in arbitration or in court.  Finding that the damages asserted class-wide are in excess of $100,000, the arbitrator ruled that the class action must be removed to state or federal court in Dallas, Texas.  Defendants appealed the arbitrator's decision to the United States District Court of the Northern District of Texas, arguing that the arbitrator's decision was in manifest disregard of applicable law. Judge Boyle of this court affirmed the arbitrator's decision, finding that there was no manifest disregard of the law by the arbitrator and declining to vacate the arbitrator's clause construction award.  Following Judge Boyle's August 30, 2005 Memorandum Order, Plaintiffs filed the instant lawsuit on February 21, 2006.

In their Complaint, Plaintiffs seek a declaratory judgment that the WIN Agreement is void because it violates both Illinois' criminal code and public policy, and also bring various civil claims under Illinois state law and federal law.  Defendants move to dismiss Plaintiffs' Complaint, and additionally have moved to compel Plaintiffs to arbitrate their claims.  The court will address each motion below.

## II.     Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 9(b), 12(b)(1) and 12(b)(6)

Defendants state in the title of their motion that they seek dismissal of Plaintiffs claims under Federal Rules of Civil Procedure 9(b), 12(b)(1) and 12(b)(6).  In their brief, Defendants make arguments under Rule 9(b) (failure to plead fraud with particularity) and Rule 12(b)(6) (failure to state a claim).  Since Defendants do not actually argue that the court lacks subject matter jurisdiction under Fed. R. Civ. P.

12(b)(1) – i.e. lack of federal question, diversity or supplemental jurisdiction, the court will only evaluate Plaintiffs' Complaint in light of the applicable standards for Rules 9(b) and 12(b)(6).

### A.    Applicable Legal Standards Under Rules 12(b)(6) and 9(b)

In reviewing a Rule 12(b)(6) motion, which tests the legal sufficiency of the claims stated in the complaint, a court must look solely at the pleadings themselves. *Jackson v. Procunier*, 789 F.2d 307, 309-10 (5th Cir. 1986).  In looking at whether the complaint states a valid claim upon which relief can be granted, the court must view all facts in a light most favorable to the plaintiff and resolve any doubts in favor of the plaintiff.  *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).  The court must assume the truth of all pleaded facts and liberally construe the complaint in favor of the plaintiff.  *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002).

To survive a 12(b)(6) motion, a plaintiff must not make mere conclusory allegations, but must instead plead specific facts. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  Dismissal is appropriate where the plaintiff merely makes conclusory allegations or unwarranted deductions of fact. *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003).  Likewise, dismissal is appropriate where the plaintiff makes no allegations regarding a required element of the asserted claim.  *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  However,  in the context of securities  fraud, a dismissal  pursuant to Rule 12(b)(6) is

5

difficult to obtain since such a claim revolves around fact-specific inquiries. *See Basic Inc. v. Levinson*, 485 U.S. 224, 240 (1988).

Section 10(b) of the Securities Exchange Act of 1934 forbids the "use or employ, in connection with the purchase or sale of any security...[of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe. . . ." 15 U.S.C. § 78j(b). Rule 10b-5, promulgated pursuant to section 10(b), forbids the use of any "device, scheme, or artifice to defraud," and makes it unlawful for an individual to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). Plaintiffs claiming a violation of 10(b) must plead, in connection with the purchase or sale of any security: "(1) a misrepresentation or omission (2) of material fact (3) made with scienter (4) on which plaintiff relied (5) that proximately caused [the plaintiff's] injury. *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 406-07 (5th Cir. 2001); *see Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-342 (2005).

Because Plaintiff asserts securities fraud under Section 10(b) and Rule 10b-5, he must also satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). Rule 9(b) requires a plaintiff alleging fraud to plead with particularity the circumstances constituting fraud, including specific allegations of the time, place, and content of the misrepresentations, the identity of the individuals who made the misrepresentations, and

6

what the person who made those misrepresentations gained from the making of those statements. *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993). In addition, the PSLRA requires complaints alleging securities fraud to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1) (1998). For particularity purposes, a plaintiff must specify the who, what, when, where, and how of their alleged securities fraud. *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 349-50 (5th Cir. 2002).

## B. Pleading of Fraud Counts – Rule 9(b)

Defendants assert that Plaintiffs have failed to meet the "particularity" requirements for pleading fraud under Fed. R. Civ. P. 9(b). More specifically, Defendants argue that Plaintiffs have not pleaded specific assertions of time, place and the contents of false representations, the identity of the person making the representations, and the circumstances of any false representations required by Rule 9(b). Defendants further contend that Plaintiffs cannot rely on "group pleading" to collectively impute statements made by WIN to individual Defendants Ralph Oats, Cathy Oats and Sherri Matthews (respectively, the "Oatses" and "Matthews").

Moreover, under the PSLRA, Plaintiffs cannot rely on "group pleading" to attribute statements to the Oatses and Matthews by virtue of their positions with WIN. The Fifth Circuit has never adopted the "group pleading" doctrine. *Southland Securities*

7

*Corp. v. Inspire Insurance Solutions Inc.,* 365 F.3d 353, 364 (5th Cir. 2004); *Fener v. Belo Corp.,* 425 F. Supp.2d 788, 796 (N.D. Tex. 2006).  Plaintiffs must identify the roles of the individual defendants, and describe their involvement, if any, in preparing the misleading statements.  *Southland,* 365 F.3d at 364, *citing In re MDC Holdings Sec. Litig.,* 754 F. Supp. 785, 795 (S.D. Cal. 1990); *see also Financial Acquisition Partners LP v. Blackwell,* 440 F.3d 278, 287 (5th Cir. 2006) (same).  Under the PSLRA, the untrue statements must be set forth with particularity as to each defendant, and scienter must be pleaded as to each act or omission to give rise to a "strong inference that the defendant acted with the required state of mind."  *Southland,* 365 F.3d at364; 15 U.S.C. § 78u-4(b).

The "group pleading" approach conflicts with the PSLRA's requirement of pleading scienter, because even if a corporate officer's position supports a reasonable inference that he likely would be negligent in not being involved in the preparation of a document or aware of its contents, the PSLRA state of mind requirement is severe recklessness or actual knowledge.  *Southland,* 365 F.3d at 365.  For the alleged fraud, Plaintiffs must distinguish between the Defendants and describe the role of each.  *Fin. Acquisition Partners,* 440 F.3d at 287; *Fener,* 425 F. Supp. at 798.  Corporate officers are not liable for acts solely because they are officers, even where their day-to-day involvement in the corporation is pleaded.  *Id.*; *Fener,* 425 F. Supp. at 798.  Corporate statements can be tied to officers if Plaintiffs allege they signed the documents on which

8

the statements were made or allege adequately their involvement in creating the documents. *Id.; Fener,* 425 F. Supp. at 798.

Here, Plaintiffs have specifically pleaded two statements by Ralph Oats that do meet the pleading standards of Rule 9(b) and the PSLRA. (Complaint at ¶ 17C and E). Beyond those allegations, Plaintiffs either fail to specify one or more of the required elements (time, place, contents, circumstances, or identity of the person making the false representations) and/or attempt to rely on impermissible group pleading. Although Plaintiffs may proceed with their claims arising out of the two specific statements by Ralph Oats identified above, the court finds that the other factual allegations in the Complaint otherwise do not sufficiently state the role each individual defendant played, and describe each person's involvement, if any, in preparing the purported misleading statements upon which Plaintiffs claim that they relied to their detriment.

Accordingly, the court agrees with Defendants that most of the Complaint does not meet Rule 9(b)'s standards of particularity or the PSLRA's pleading requirements. Plaintiffs make many allegations of fraudulent misrepresentations by WIN generally, but do not properly detail the time, place, and circumstances of each representation, or the identity or identities of the speaker or speakers. Fed. R. Civ. P. 9(b); *Shushany*, 992 F.2d at 521. Further, Plaintiffs cite to several alleged WIN corporate documents or publications but do not attribute the drafting or preparation of those documents to any individual, officer or employee of WIN. *See Fin. Acquisition Partners,* 440 F.3d at 287 (plaintiff must allege that corporate officer signed documents containing

9

misrepresentations or participated in their preparation).  Plaintiffs cannot rely upon unattributed statements and then generally state that Defendants are, as a group, responsible for those alleged misrepresentations.  For these reasons, these claims do not meet the requirements of Rule 9(b).

### C.   Rule 12(b)(6) – Failure to State a Claim

Defendants further contend that in addition to the deficiencies in Plaintiffs' pleading of their fraud claims, all of Plaintiffs claims should be dismissed under Fed. R. Civ. P. 12(b)(6).

### 1.   Federal Securities Law Claims

Defendants argue that even if Plaintiffs had properly pleaded their securities fraud claims, Plaintiffs' claims brought under section 10(b) of the Securities Exchange Act and corresponding Rule 10b-5 are not timely filed and must be dismissed.  Under 28 U.S.C. § 1658(b), the applicable limitations period, such violations must be brought not later than the earlier of (1) two years after the discovery of facts constituting the violation; or (2) five years after such violation.  28 U.S.C. § 1658(b)(1) & (2); *Margolies v. Deason,* 464 F.3d 547, 550 (5th Cir. 2006).  The record shows that the allegations of Ackerman are based upon conduct that occurred between late 1999 and December 2002, and that the conduct alleged by the Budners took place between May and November 2002.  This lawsuit was filed on February 21, 2006, and therefore Defendants contend that Plaintiffs did not meet the applicable statute of limitations for their section 10(b) claims.

10

The court agrees, and finds that when the applicable facts are considered in the light most favorable to Plaintiffs, these claims are  barred by limitations.  At the latest, Plaintiffs were aware of the facts alleged to have constituted a section 10(b) violation by March 2003, the date they filed their Illinois case asserting such a claim.  Therefore, the limitations period on their section 10(b) claims ran (at latest) two years later, on March 26, 2005.  Plaintiffs' filing of these claims in the instant lawsuit on February 21, 2006 is therefore untimely.  28 U.S.C. § 1658(b)(1).

Plaintiffs respond that their suit is timely because they originally filed suit against Defendants in an Illinois federal court in March 2003, including their claims under section 10(b).  According to Plaintiffs, the allegations in that lawsuit were based upon the same conduct at issue here.  After the case went to arbitration, and the arbitrator determined that Plaintiffs' claims should be litigated in a state or federal court located in Dallas, Texas, Plaintiffs brought their claims here.  Despite the lateness of their filing, Plaintiffs assert that their section 10(b) claims are timely because they are "saved"by either the Texas or Illinois "savings" provisions (*see* Tex. Civ. Prac. & Rem. Code § 16.064; 735 ILCS 5/13-217), and because they "relate back" to their earlier-filed Illinois case.

First, Plaintiffs argue that these claims are not barred because they "relate back" to the earlier Illinois lawsuit under Fed. R. Civ. P. 15(c).  Rule 15(c) addresses amended and supplemental pleadings within a case, not "relation back" of a second case's pleadings to a separate, earlier-filed case.  *See, e.g., Carter v. Texas Dept. of Health,* 119

11

Fed. Appx. 577, 581 (5th Cir. 2004), *cert. denied,* 545 U.S. 1146 (2005) (Rule 15(c)

pertains only to pleadings within the same case, and does not permit a complaint in one

case to relate back to a complaint in another case); *Benge v. United States,* 17 F.3d 1286,

1288 (10th Cir. 1994) (new, separately-filed lawsuit was not an amended or

supplemental pleading under Rule 15 and did not relate back to claims previously

dismissed for lack of proper service of process); *Bailey v. Northern Indiana Pub. Svc. Co.,*

910 F.2d 406, 412-13 (7th Cir. 1990) (Rule 15(c) only applies to amended pleadings in

the same action, not a second, separate complaint); *In re Community Bank of Northern Va.,*

467 F. Supp.2d 466, 478 (W.D. Pa. 2006) (same); *Bui v. IBP, Inc.,* 205 F.Supp.2d 1181,

1184-85 (D. Kan. 2002) (same); *United States ex rel Koch v. Koch Indus., Inc.,* 188 F.R.D.

617, 621 (N.D. Okla. 1999) (same).  The instant case is newly-filed lawsuit, not an

amendment of pleadings within the same case.  Therefore, under the language of Rule

15(c) and relevant case law, the doctrine of relation back does not preserve these claims.

Next, the court concludes that the "savings" rules cited to by Plaintiffs also will

not revive these claims.  The Texas savings statute states that:

(a)     [t]he period between the date of filing an action in a trial
        court and the date of a second filing of the same action in a
        different court suspends the running of the applicable statute
        of limitations for the period if:

        (1)     because of lack of jurisdiction in the trial court
                where the action was first filed, the action is
                dismissed or the judgment is set aside or
                annulled in a direct proceeding; and

      (2)      not later than the 60th day after the date the dismissal or other disposition becomes final, the action is commenced in a court of proper jurisdiction.

  (b)      This section does not apply if the adverse party has shown in abatement that the first filing was made with intentional disregard of proper jurisdiction.

Tex. Civ. Prac. & Rem. Code § 16.064.  Illinois' Code of Civil Procedure also provides for a savings clause, but as Defendants point out, Illinois' rules of civil procedure do not apply in federal court, and Plaintiffs have not cited any authority showing that this Illinois procedural rule must be applied by a federal court sitting in Texas.

Meanwhile, the federal courts in this state have considered the application of, and where appropriate, have applied the Texas savings statute to preserve dismissed claims that would have otherwise been barred by limitations.  *See, e.g., Hotvedt v. Schlumberger Ltd. (N.V.),* 942 F.2d 294, 297 (5th Cir. 1991) (considering application of Tex. Civ. Prac. & Rem. Code § 16.064, but concluding that filing in wrong forum was not a result of good faith mistake, but rather was a tactical decision by plaintiffs' attorney, thus savings clause did not apply); *Sarmiento v. Texas Board of Veterinary Medical Examiners,* 939 F.2d 1242, 1248 n.13 (5th Cir. 1991) (stating that limitations period was tolled by Texas savings statute); *In re Paso Del Norte Oil Co.,* 755 F.2d 421, 426 n.7 (5th Cir. 1985)(dismissing state law claims but noting that tolling applied under predecessor to section 16.064); *Youngblood Group v. Lufkin Federal Savings and Loan Assn.,* 932 F. Supp. 859, 876-77 (E.D. Tex. 1996) (stating that statute of limitations for supplemental state

13

law claims, if dismissed, would be tolled by Tex. Civ. Prac. & Rem. Code § 16.064);

*Frazer v. Chicago Bridge and Iron,* 2006 WL 801208, *3 (S.D. Tex. 2006) (finding action

time-barred because plaintiff did not re-file case within 60 days of previous court's

dismissal, as required by Texas savings statute); *Finger Furniture Co., Inc. v. Mattress Firm,*

*Inc.,* 2005 WL 1606934, *5 (S.D. Tex. 2005) (noting that Texas savings clause allows

litigants 60 days to re-file their claims following dismissal for want of jurisdiction).

Thus, the court must determine whether Tex. Civ. Prac. & Rem. Code § 16.064 has

tolled the relevant statute of limitations here.

The court finds that it does not.  First, The WIN Agreement provides that all

claims arising between the parties be brought either in an arbitration proceeding in

Dallas County, Texas, or in a state or federal court sitting in Dallas County, Texas,

depending upon whether the damages claimed are in excess of $100,000.   Forum

selection clauses found in written contracts such as this one are presumptively valid.

*Carter v. Countrywide Credit Industries, Inc.,* 362 F.3d 294, 299 (5th Cir. 2004); *Kevlin*

*Services, Inc. v. Lexington State Bank,* 46 F.3d 13, 15 (5th Cir. 1995).

Instead of initially pursuing their claims in Dallas County (in either an arbitral

or judicial forum) as provided by the WIN Agreement, Plaintiffs intentionally chose to

file a lawsuit in the United States District Court for the Northern District of Illinois,

where they were unsuccessful in challenging the validity of the WIN Agreement's forum

selection clause.  These undisputed facts establish that the Texas savings statute does

not apply, due to the exclusion set forth in sub-part (b) of the statute, which states that

14

the savings provisions are inapplicable if the first filing was made in intentional disregard of proper jurisdiction.  Tex. Civ. Prac. & Rem. Code § 16.064(b).

Finally, even if the Texas savings statute did apply, Plaintiffs' section 10(b) claims would still be untimely.  These claims were dismissed by Judge Boyle on August 30, 2005.  Therefore, even if the 60 day period provided for under Tex. Civ. Prac. & Rem. Code § 16.064(a) was applied, Plaintiffs did not file this lawsuit on or before October 30, 2005, the last day of the tolling period.  Even when the court takes as true Plaintiffs' allegation that they did not learn of Judge Boyle's ruling until December 14, 2005, the tolling period, although inapplicable because Plaintiffs did not mistakenly, but rather intentionally, first filed their case in the wrong jurisdiction, would have only extended until February 13, 2006.  Under even this most generous interpretation of the relevant facts, Plaintiffs' February 21, 2006 filing of these claims was untimely, and for this reason they must be dismissed.

Plaintiffs' claims under sections 77e and 77l of the Securities Exchange Act of 1933 are also time- barred.  Claims for violations of those sections of the statute must be brought, at latest, within three years of the violation.  15 U.S.C. § 77m; *Topalian v. Ehrman,* 954 F.2d 1125, 1134-35, n.23 (5th Cir.), *cert. denied,* 506 U.S. 825 (1992).  If the court credits Plaintiffs' allegations that Ackerman's claims accrued (at latest)  in December 2002, and that the Budners' claims accrued (at latest) in November 2002, all of the Plaintiffs were still within the applicable three-year statute of limitations when Judge Boyle dismissed the first case on August 30, 2005.  Specifically, Plaintiffs still had

15

time remaining within the statutory limitations period and could still have timely filed these claims following the dismissal of the first lawsuit.  They did not file their claims until February 21, 2006,  after the statute of limitations had run, and therefore these claims are time-barred.  Additionally, for the reasons stated above with respect to Plaintiffs' claims brought under section 10(b) and Rule 10b-5, the doctrine of relation back and/or the Texas savings statute also have not preserved these claims.

### 2.      Claims Against Individual Defendants

The Oatses and Matthews all assert that Plaintiffs' claims against them must be dismissed because the WIN Agreement states that all "covenants, duties, obligations and liabilities of WIN to a distributor" are as to WIN only and that officers, directors and employees of WIN are not personally liable under the WIN Agreement.  The court agrees that the Oatses and Matthews have no liability to Plaintiffs under the WIN Agreement.  However, the agreement does not bar extra contractual claims against them as individuals.  Accordingly, the motion is granted as to all claims against the Oatses and/or Matthews arising from the WIN Agreement, and those claims are dismissed with prejudice.  As to non-contractual claims against the Oatses and/or Matthews, the motion is denied.

### 3.      Applicability of Texas Law

Relying on the language of the WIN Agreement, Defendants also argue that all of Plaintiffs' Illinois law claims must be dismissed.  Specifically, Defendants cite to text

16

found in the WIN Agreement that states the WIN Agreement "shall be construed and enforced in accordance with the laws of the state of Texas... ."  While the court agrees with Defendants that the WIN Agreement is governed by Texas law, this contractual language applies only to claims arising out of that agreement.  Additional tort claims such as those brought by Plaintiffs are not subject to Texas law.  Although Plaintiffs' state law claims are brought under Illinois law, the court has diversity jurisdiction over those claims under 28 U.S.C. § 1332.  Thus, the court will not dismiss these claims merely because they rely upon Illinois law.

### 4.    Limitation of Liability to Unsold Inventory

Defendants next allege that Plaintiffs' tort claims should be dismissed because under the WIN Agreement the parties agreed to limit liability to unsold WIN product inventory.  While the court agrees that this provision may be enforceable with respect to claims based upon the contract, Defendants cannot prospectively limit their liability for intentional torts such as those pleaded by Plaintiffs.  Texas courts have held that a party cannot prospectively insulate itself contractually from liability for intentional torts. *See Solis v. Evans,* 951 S.W.2d 44, 50 (Tex. App. – Corpus Christi 1997, no writ) (would be contrary to public policy to enforce contractual provision exculpating party from liability for future intentional torts); *Oxy USA, Inc. v. Southwestern Energy Prod. Co.,* 161 S.W.3d 277, 283 (Tex. App. – Corpus Christi 2005, pet. filed) (party may not prospectively contractually exculpate itself with respect to intentional torts).  Therefore,

17

the court cannot dismiss Plaintiffs' tort claims based upon the parties' contractual limitation of liability.

### 5.     Count I - 720 ILCS 5/17-7

Defendants contend that they are entitled to dismissal of Count I of Plaintiffs' Complaint, which seeks a declaratory judgment that the WIN Agreement is illegal under section 720 ILCS 5/17-7, a statute that criminalizes the promotion of pyramid sales schemes.  The court agrees that this claim must be dismissed.  First, the parties agreed that the construction and interpretation of the WIN Agreement is governed by Texas law.  Secondly, the criminal statute cited by Plaintiffs does not appear to grant Plaintiffs a private right of action.  For both of these reasons, Plaintiffs' claim brought under 720 ILCS 5/17-7 shall be dismissed.

### 6.     Count II - Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*

Defendants assert that Plaintiffs' claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("ICFA") should also be dismissed for failure to state a claim.  Specifically, they argue that these claims fail because Texas law applies to the WIN Agreement, that Plaintiffs have failed to plead specific facts showing that they are entitled to relief under this statute, that Plaintiffs have not pleaded facts to show that they are consumers as contemplated by the statute, or that the conduct alleged has a consumer protection nexus, and finally that these claims are barred by limitations.

18

The court has already determined that while the parties agreed that Texas law applies to the WIN Agreement, the ICFA claims and other additional tort claims asserted by Plaintiffs need not be brought under Texas law, as they are extra contractual. Accordingly, the court will not dismiss these claims based upon the choice of law provision applicable to the WIN Agreement itself.

Next, Defendants argue that Plaintiffs have merely made conclusory allegations that WIN is a pyramid scheme rather than pleading specific facts that would entitle them to relief under the statute.  The court disagrees with Defendants, and finds that Plaintiffs have stated facts that, if believed, amount to more than a conclusory allegation of a pyramid scheme in their Complaint.  (Complaint at pp. 6-15).   The ICFA specifically prohibits pyramid or chain referral sales schemes such as that alleged in Plaintiffs' Complaint.  815 ILCS 505/2A.  Viewing the facts pleaded by Plaintiffs in the light most favorable to them, the court finds that they have sufficiently stated a claim under the ICFA.

Finally, Defendants assert that even if Plaintiffs have sufficiently pleaded their IFCA claims, those claims are barred by the applicable statute of limitations.  They argue that the allegations of Ackerman are based upon conduct occurring between late 1999 and December 2002, and that the conduct alleged by the Budners took place between May and November 2002.  This lawsuit was filed on February 21, 2006, and therefore Defendants contend that Plaintiffs did not meet the applicable three-year statute of limitations for their ICFA claims.  815 ILCS 505/10a(e); *Gredell v. Wyeth Laboratories,*

19

*Inc.,* 346 Ill.App.3d 51, 57, 803 N.E.2d 541, 546 (2004).

Plaintiffs respond that their suit is timely due to their March 2003 filing in an Illinois federal court, including their ICFA claims.   Plaintiffs also assert that their IFCA claims are timely because they are preserved either by Texas' savings provision (*see* Tex. Civ. Prac. & Rem. Code § 16.064), or under the doctrine of relation back.

The court disagrees, and finds that when the applicable facts are considered in the light most favorable to Plaintiffs, this claim is barred by limitations.  First, if the court takes as true Plaintiffs allegations that Ackerman's claims accrued (at latest)  in December 2002, and that the Budners' claims accrued (at latest) in November 2002, all of the Plaintiffs were still within the applicable three-year statute of limitations when Judge Boyle dismissed the Illinois case on August 30, 2005.  Specifically, Plaintiffs still had time following the dismissal of that case to file their IFCA claims within the statutory limitations period.  They did not file their claims until February 21, 2006, after the statute of limitations had run.   Furthermore, for the reasons stated above regarding Plaintiffs' federal securities law claims, neither relation back under Fed. R. Civ. P. 15(c) nor the Texas savings statute, Tex. Civ. Prac. & Rem. Code § 16. 064, apply in this situation.  As the court has stated at length above, this is a new, separately-filed lawsuit, and Plaintiffs made a conscious decision to proceed initially in the Illinois federal court rather than in a forum provided for by the WIN Agreement.  Accordingly, Plaintiffs' IFCA claims must be dismissed.

7.      **Count III - Illinois Business Opportunity Sales Law**

Defendants further assert that Plaintiffs' claims under the Illinois Business Opportunity Sales Law ("BOSL"), 815 ILCS 602/1, *et seq.,* should be dismissed for failure to state a claim. Specifically, Defendants argue that Plaintiffs have not stated any facts showing that Defendants offered to sell them a "business opportunity" as defined by the BOSL. They further state that the BOSL does not apply to transactions where the payment made by the purchaser does not exceed $500, and the payment is made for the not for profit sale of sales demonstration equipment, material or samples, or for product inventory sold to the purchaser at a bona fide wholesale price. 815 ILCS 602/5-5.10(b)(7). Defendants argue that because the WIN Agreement states that "no purchase of WIN products or services is necessary to become a WIN Distributor other than the purchase of a WIN System for Success, which is sold at company cost and contains sales materials not for resale," Plaintiffs do not meet the $500 threshold set by the BOSL.

Plaintiffs respond that they have sufficiently alleged in their Complaint facts that, if true, show Defendants sold them a "marketing plan," which is considered a business opportunity under the BOSL. 815 ILCS 602/5-5.10(a)(6). The BOSL defines a "marketing plan" as:

> §5-5.15. Marketing Plan. "Marketing plan" means advice or training, provided to the purchaser by the seller or a person recommended by the seller, pertaining specifically to the sale of any enterprise, product, equipment, supplies or services and the advice or training includes, without limitation, preparing or providing:

    (1)    Promotional literature, brochures, pamphlets or advertising materials;

    (2)    Training, regarding the promotion, operation or management of the business opportunity; or

    (3)    Operational, managerial or financial guidelines or assistance or continuing technical support.

815 ILCS 602/5-5.15.  Plaintiffs further state that even if the WIN System for Success did not cost more than $500, they have pleaded facts showing that WIN distributors were induced to purchase inventory in excess of what they could sell, in order to "buy into a high rank" in the WIN organization.  Plaintiffs have further alleged in their Complaint that WIN's products are priced in excess of their fair market value, and thus were not sold at a bona fide wholesale price.

The court agrees that at this stage in the case, when taking the facts pleaded by Plaintiffs as true, Plaintiffs have sufficiently pleaded the sale of a marketing plan as required by the BOSL.  Because of their allegations that they were required to purchase large amounts of unneeded inventory, the court determines that Plaintiffs have also pleaded facts that, if proven, would show that their investment in WIN exceeded $500 even if they did not pay over $500 for the WIN System for Success.

Although Plaintiffs' pleading of these claims is sufficient, Defendants also contend that they should fail on limitations grounds.  Plaintiffs did not bring these claims in the Illinois lawsuit, and have pleaded them for the first time in this case.  The statute of limitations for claims brought pursuant to the BOSL is three years.  815 ILCS 602/5-

130(a).  Thus, since these claims were not previously dismissed by another court, the Texas savings statute does not apply.  Tex. Civ. Prac. & Rem. Code § 16.064. Accordingly, the limitations period for these claims expired, at the latest, in December 2005.  Plaintiffs did not assert these claims until February 2006, beyond the statutory limitations period.  815 ILCS 602/5-130(a).  Further, as the court has already determined, relation back under Rule 15(c) also does not preserve any of Plaintiffs' causes of action.  Plaintiffs' BOSL claims must be dismissed.

### 8.      Count IV – Illinois Franchise Disclosure Act

Plaintiffs' next claims are brought under the Illinois Franchise Disclosure Act, 815 ILCS 705, *et seq.* ("IFDA").  Defendants assert that these claims should also be dismissed, because the WIN Agreement provides that Texas law applies to Plaintiffs' claims, because Plaintiffs have failed to establish that any Defendant offered or sold them a franchise, and because these claims are barred by limitations.

Defendants cannot obtain dismissal of this claim merely by asserting that Texas law applies under the WIN Agreement.  By law, parties cannot opt out of the IFDA if the IFDA would otherwise apply to their transaction.  815 ILCS 705/41; *see also To-Am Equipment Co., Inc. v. Mitsubishi Caterpillar Forklift America, Inc.,* 152 F.3d 658, 662 (7th Cir. 1998) (IFDA applied despite parties' written agreement that contract was to be governed by Texas law).  Therefore, the court must determine whether Plaintiffs have pleaded sufficient facts that, when taken as true, state a claim for relief pursuant to the IFDA.

23

Defendants also contend that Plaintiffs cannot show that they were offered or sold a "franchise" as required by the IFDA.  The IFDA states that:

(1)    "Franchise" means a contract or agreement, either expressed or implied, whether oral or written, between two or more persons by which:

       (a)    a franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services, under a marketing plan or system prescribed or suggested in substantial part by a franchisor; and

       (b)    the operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate; and

       (c)    the person granted the right to engage in such business is required to pay, directly or indirectly, a franchise fee of $500 or more.

815 ILCS 705/3(1)(a)-(c).  In pertinent part, the statute further defines a "franchise fee" as:

(14)    any fee or charge that a franchisee is required to pay directly or indirectly for the right to enter into a business to sell, resell, or distribute goods, services or franchises under an agreement, including, but not limited to, any such payment for goods or services, provided that the Administrator may by rule define what constitutes an indirect franchise fee.

815 ILCS 705/3(14).  If any element of section 705/3(1) is not satisfied, then the franchise relationship is not satisfied.  *Carl A. Haas Automobile Imports, Inc. v. Lola Cars*

24

*Ltd.,* 933 F. Supp. 1381, 1393 (N.D. Ill. 1996), *citing Mechanical Rubber & Supply Co. v. American Saw and Mfg. Co.,* 810 F. Supp. 986, 991 (C.D. Ill. 1990).

Plaintiffs respond that they have pleaded sufficient facts stating that all three requirements of section 705/3(1) (a)-(c) are met.  First, they argue that they have pleaded facts showing that they were granted the right to offer others the opportunity to become part of the WIN organization, satisfying IFDA section 705/3(1)(a).  The court agrees.  As the court stated above, Plaintiffs have satisfactorily pleaded facts showing that they purchased a WIN System for Success and WIN products, and that they were granted the right to sell those products and to recruit others to join the WIN organization.  Taking the facts pleaded by Plaintiffs in the light most favorable to them, the court determines that at this point, Plaintiffs have sufficiently pleaded facts supporting the first prong of IFDA section 705/3.

Next, Plaintiffs must sufficiently allege that they operated their WIN distributorships in "substantial association" with the WIN trademark or trade name.  815 ILCS 705/3(1)(b).  In their response, Plaintiffs make numerous references to the WIN System for Success Manual and the WIN Rules & Regulations, which (according to Plaintiffs) permit distributors to use the WIN trade name.  (Plaintiffs' response at p. 28).  They then conclude that "[t]he second prong of the Franchise Act is fully satisfied." (*Id.*).  However, Plaintiffs have not pleaded these facts in their Complaint.  Therefore, the court finds that Plaintiffs have not adequately pleaded this prong of their IFDA claims.

25

Finally, Plaintiffs contend that they have sufficiently pleaded the payment of a franchise fee as required by the IFDA, 815 ILCS 705/3(1)(c), (14).  Specifically, they have stated that the franchise fee requirement is satisfied because of the facts they have alleged regarding Defendants' "inventory loading" practices and requiring WIN distributors to "qualify" their dealerships each month by purchasing WIN products regardless of whether previously purchased inventory had been sold, before they would be paid for any of the efforts of the distributors in their downline organizations. Plaintiffs have further alleged that WIN distributors were required to "pay to play" by purchasing WIN products in order to qualify for bonuses and other incentives.

The Seventh Circuit has observed that the definitions of a "franchise fee" under the IFDA are "sweeping in their scope." *To-Am,* 152 F.3d at 662.  Given that this definition is construed liberally, courts have found that in some cases, a party may rely on the cost of inventory to establish an "indirect" franchise fee. *Digital Equipment Corp. v. Uniq Digital Technologies, Inc.,* 73 F.3d 756, 760 (7th Cir. 1996); *Wright-Moore Corp. v. Ricoh Corp.,* 908 F.2d 128, 136 (7th Cir. 1990); *P&W Supply Co., Inc. v. E.I. Du Pont de Nemours & Co., Inc.,* 747 F. Supp. 1262, 1265-66 (N.D. Ill. 1990).  An excessively large inventory transfers cash to the seller without producing benefits for the buyer, and the interest a seller can earn by making the sales earlier can be viewed as a fee. *Digital Equipment,* 73 F.3d at 760, *citing Wright-Moore,* 908 F.2d at 136.  Thus, where a buyer is required to purchase an unreasonably large inventory of goods, such that those goods cannot be sold within a reasonable time could be found to constitute an indirect

26

franchise fee.  *P& W,* 747 F. Supp. At 1266.  The court agrees that Plaintiffs' factual allegations regarding excessive inventory requirements are, at this stage of the case, adequate to establish the third prong of their  IFDA claims.

In addition to their contentions regarding inadequate pleading of facts in support of this claim, Defendants argue that this claim is barred by limitations.  As it pertains to this case, a claim made under the IFDA must be brought either within three years after the act or transaction upon which it is based, or within one year after the franchisee becomes aware of facts or circumstances reasonably indicating that he may have a claim for relief in respect to conduct governed by the IFDA.  815 ILCS 705/27.  Like their BOSL claim, Plaintiffs did not include this claim in their Illinois case, and brought it for the first time in the instant case.  Accordingly, the Texas savings statute is inapplicable. If the three year statute of limitations is applied to Plaintiffs' IFDA claim, the latest date the limitations period would have expired is in December 2005, prior to Plaintiffs' filing of this claim in February 2006.  Therefore, this claim is also untimely and must be dismissed.

### 9.    Count VII – Unjust Enrichment

Defendants have moved to dismiss this claim by contending that it is barred by the applicable statute of limitations.  Unjust enrichment claims are subject to a two-year statute of limitations.  Tex. Civ. Prac. & Rem. Code § 16.003(a); *Mayo v. Hartford Life Ins. Co.,* 354 F.3d 400, 410 (5th Cir. 2004), *citing Wagner & Brown, Ltd. v. Horwood,* 58 S.W.3d 732, 737 (Tex. 2001); *HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 885 (Tex.

27

1998). Plaintiffs did not assert this claim in the Illinois case; thus, the court need not consider whether the Texas savings statute applies. Based upon the factual allegations pleaded by Plaintiffs, it appears that the limitations period for this claim ran, at the latest, in December 2004. Since Plaintiffs did not bring their unjust enrichment claim until February 2006, it is barred by the statute of limitations. *Id.*

### III.   Defendants' Motion to Compel Arbitration and Stay and Abate Litigation

Because the court has determined that all of Plaintiffs' claims must be dismissed, this motion is moot. However, even if Plaintiffs' claims had survived dismissal, the court would not order this case to arbitration. Defendants allege that under the WIN Agreement, Plaintiffs must arbitrate their claims instead of litigating them in this forum. The court disagrees. These claims were initially sent to arbitration, whereupon the arbitrator determined that when potential damages are assessed class-wide, they exceed $100,000, which is the limit for arbitration of claims set forth in the WIN Agreement. The arbitrator further determined that the WIN Agreement does not bar class claims. This decision by the arbitrator has already been affirmed by Judge Boyle of this court. (Civil Action No. 3:05-CV-0237 at Docket No. 17). Accordingly Defendants' Motion to Compel Arbitration and Stay and Abate Litigation is **denied as moot.**

### IV.   Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is **granted,** and Plaintiffs' claims are **dismissed with prejudice.** Defendants' Motion to Compel

Arbitration and to Stay and Abate Litigation is **denied as moot.**  Judgment will be

entered by separate document.

**SO ORDERED.**

Signed March 15th, 2007.

ED KINKEADE
UNITED STATES DISTRICT JUDGE